Good morning, Your Honors. Gretchen Fuselier on behalf of the appellant, Fabel Roque. If it please the Court, I would like to reserve two minutes for any rebuttal that I might need. Mr. Roque submits in his argument that there was the evidence in the trial in the FBI did not have either the intent, the propensity, the predisposition, or the capability of providing and supplying two ounces of methamphetamine to Jaguar, which is the code name for the confidential informant used by the FBI in their task force investigations since 2009. Excuse me, Mr. Whit, would you please turn up the sound a little bit? You have a nice soft voice. It would help me. Thank you. I'd like to address some of the mischaracterizations that the government has argued relating to what it submits proves intent and capability by Mr. Roque. The government argues that in the March 15, 2010 telephone conversation between Roque and Jaguar, that Mr. Roque willingly agreed in that first telephone call to participate in this two-ounce methamphetamine transaction. The transcript of the trial below belies that and indicates very clearly that there had not been any evidence that this, in fact, had been the first contact between Mr. Roque and Jaguar. In fact, when we look at the transcript of the conversation, we know it's not the first contact because Jaguar says to Mr. Roque, how's the tooth going? And that obviously indicates that there had been a pre- I thought they sort of knew one another. Isn't that right? Pardon me? They knew one another. Yes, they knew one another. Or they knew of one another. They knew of one another. Jaguar was actually related to Mr. Roque's wife, so they did know one another. But we have the background that Jaguar was somewhat of a rogue confidential informant. He fails to follow the rules of the task force. He actually was caught on the FBI's video camera smoking methamphetamine during the transaction of the methamphetamine controlled by. However, because of bad management, the task force did not discover this until after they had discharged Jaguar. However, there are some significant points to be made. The government indicates that Mr. Roque initiated a three-ounce methamphetamine transaction. Again, the transcripts negate that. When we look at the appellant's excerpts of record, we see that Jaguar mentions to Mr. Roque, do you have the three ounces? And he said, no, he has one ounce. And the testimony of agent, the FBI agent Hamilton, bears this out. Hamilton indicates in his testimony in court that on April the 14th, there was a conversation between Jaguar and Mr. Roque, in which Mr. Roque told Jaguar that he does not have the three ounces, he has one ounce. And when that question was asked of Mr. Hamilton or agent Hamilton during trial, he said, yes, that sounds correct. Well, counsel, assuming all of this is true and we have read the briefs, and assuming the district court erred in refusing to give the jury instruction on sentencing entrapment, has Roque demonstrated a reasonable possibility that this error materially affected the verdict? Can he demonstrate the error was not harmless beyond a reasonable doubt? I believe so, Your Honor. And how does he do that? The evidence is that the only intent that Mr. Roque had was expressed when he mentioned to Jaguar, what would you sell one-eighth of an ounce for? So his only intention, not even possibility because he didn't have money, he admitted, could not, he could not even buy and supply one-eighth. But that does indicate what he was capable of doing. But we know there isn't an issue here of ability because he ultimately did supply two ounces. Well, that usually is the case in all of the sentencing entrapments. It is whether or not there was significant pressure put onto the target that forced him ultimately to provide what was demanded. And so this is no different from the other sentencing entrapment cases. Where is the pressure? The pressure is the relentless pursuit that the government had with Mr. Roque. As we've indicated, it begins March the 5th, March 15th, excuse me, 2010, and there was no contact again until April the 14th. Didn't Mr. Roque object and say, gee, where have you been? Where have you been? Or something like that. No, but he did object to providing the methamphetamine. Matter of fact, when they spoke on April the 14th, 2010, Jaguar insisted on going to Mr. Roque's place of work in order to give him the money. Mr. Roque was very clear. He said, no, do not come here. When you go to my house and meet the source, you can give him the money. And this is indicated in the appellant's excerpts of Record 353. On that same day, seven minutes later, or eight minutes later, excuse me, Roque is called again by Jaguar. And he indicates, no, I want to come and give you the money. Again, he says no three or four times. No, no, no. You're going to go to my house. You're going to go to my house. Give the money to the person who's providing it. Again, that is referenced in the brief. So there was the tracking from March the 15th, 2010, until April the 21st, ultimately when this transaction occurred. Let me just back up just a little bit. The error here is the failure to give a sentencing entrapment instruction. That's correct. Right? That's what the error is, right? That's correct. And to get an instruction like that, you didn't have to establish that it was more likely than not or whatever that he would prevail on that defense, right? Well, there was the argument. What's the standard? The standard for the jury instruction is whether or not there has been proof to the preponderance of the evidence that Mr. Roquet had the intent to perhaps commit a lesser crime, but the government, through its agent, Dragoire, structured, pressured, in any form, according to case law, through friendship, through harassment, through any form of pressure, to arise at the objective of getting him to supply a larger amount that would link to a maximum sentence. And here, of course, was those circumstances. To answer the previous question, it's not harmless error because, as the court said in Cortez, if there's just one, well, it might have been in U.S. v. Casey, but if there is just one juror who believed that Mr. Roquet did not have the predisposition and did not have the intent or the capability, that it was mandated by the district court, in fact, to provide and instruct the jury on sentencing entrapment. Isn't all you have to show a reasonable possibility? A reasonable possibility. That the error materially affected the verdict. That's correct, Your Honor, and the reasonable possibility is the standard, notwithstanding that the evidence on sentencing entrapment was either weak or scintilla, although the government does cite another case indicating that a scintilla is not sufficient. But in that particular case, which was Morton, the court said that the evidence was just so, so insignificant. You're running out of time. Insignificant because it was a person who was asserting self-defense against a police officer when the police officers testified clearly at trial that they had yelled, I would. Thank you. Thank you. Good morning, Your Honors. I'm Assistant United States Attorney Stephen Wolf. I was one of the two. Would you speak up, please? Yes, I was one of the two prosecutors in the trial below. It seems to me that the interesting thing about the case is that I believe the standard is more favorable to the defendant than he told, Your Honors, that for the instruction, the defendant would only be required to show some evidence, sufficient evidence, more than a scintilla. I find it interesting here. The district judge prior to the start of the trial said, ah, to get this instruction, you have to show, what was it? Prima facie. A prima facie case. Where did he get that from? I can't say that I know, Your Honor. That used to be the standard in the Seventh Circuit, but it's been, they have gone away from that. In fact, I think they had to, perhaps. But at any rate, he didn't apply that standard when he decided on whether to submit an instruction, correct? I don't believe so, Your Honor. The court's description of the thought process was that there wasn't sufficient evidence without stating what the standard was. As I started to say, the standard, it seems to me, is more favorable to the defendant, but the facts are less favorable. They're much less favorable, and they're very interesting because this is a somewhat unusual case, only for the reason that the informant didn't testify, the defendant chose not to testify, there was no dispute about the text of the conversations. They're all in a foreign language, but for occasional words. They said homie in English once in a while. So the evidence is utterly undisputed, and the question for Your Honors is whether, on abuse of discretion, Judge Anderson correctly found that there wasn't quite enough. And I submit that that's true. Counsel, the trouble I have with the evidence, at trial, an FBI agent testified that Jaguar went to Roque's house and met with Mack. The agent stated that a drug purchase was not made at that time because Mack only had a small amount. Now, for me, from this, it isn't at least conceivable that a jury could find the government intended to increase the drug quantity sold as Jaguar rejected Roque's offer to sell the smaller amount. If the standard is a reasonable possibility, couldn't a jury find a reasonable possibility? Your Honor, I would say no because of the uncertainty about what the smaller amount was and the uncertainty about who Mack was. I'd make the point that these cases, the deal took place in 2010. The takedown was in 2013. The government was not doing buy busts here but buy walks. The government had an informant, Jaguar, who was solid in the gang and who was capable of buying from a number of defendants and making a number of cases but not if arrests were made. Wasn't there something about that day that Jaguar just, he had a sample or something and that there were police around? I wasn't totally sure that I understood. The defendant said to, Jaguar asked the defendant, does Mack have an ounce? Roque said, no, he has a handful that I gave him just so you could see it. I don't have, to me a handful suggests even more than the two ounces that he produced on April 21st because that's only a ball, not even as big as a baseball. How do we know that? I'm sorry, Your Honor. How do we know that? How do we know what? It's only, you said a handful. Well, a handful to me suggests more than the defendant. We don't know. There was no evidence of what a handful. We have no idea, which is why the uncertainty about. Didn't Jaguar say that on the 14th, didn't Jaguar say that one ounce was too small of an amount? I'm sorry, did Jaguar? I don't believe he did, Your Honor. On the 14th? So what happened on the 14th? On the 14th, the informant tried to make a deal after he'd been criticized severely by Roque for not doing the deal the day before, which is one of the strongest points about whether this inducement was anything but ordinary. Roque couldn't produce anything but what he himself characterized as a sample. He also called it a handful, which confuses me to this day, but it doesn't suggest that it was a merchantable amount, and moreover, it confronted the FBI with the question, do we want to take a chance by buying now from someone whom we've never seen before, we don't know where he came from, we don't have a phone number for him, we won't be able to get back to him again, and the investigation can go off in. . . I thought the FBI agent testified from his notes that on the 14th that Jaguar rejected the offer to sell, Roque's offer to sell about an ounce, because it was too small of a quantity. Your Honor, well, I speak subject to correction because the testimony is obviously undisputed. I do not recall Agent Hamilton saying that it was too small. My recollection is he started to give an answer that might well have ended that way, but his. . . I do not recall that. I wonder why. Isn't it the defendant that objected and that was why there wasn't a complete answer? Yes, Your Honor. The defendant stopped the answer, so we don't really know precisely what it was. Well, I'm looking at the transcript here at Excerpt of Record 198. Question. Was any drug purchase made as a result of that meeting with Mack at the defendant's house? Answer. No, because Mack had only a small. Mr. Rayner objection, nonresponsive, et cetera. The court said the answer will stand, and that's in the record. Yes, Your Honor, and as I said, Mr. Roque had called it when asked, does he have an ounce? He said no, he has a handful. I only gave him a handful, and Agent Hamilton characterizes it as a small, but we have no way to know whether it's a small sample, a small taste. It's just we don't know. I don't know. And where do you find the word handful? It's in one of the conversations from the 14th. Excerpt of Record. I'm sorry, Your Honor, I don't have it. All right. So, as I said, the evidence is undisputed. It's all before Your Honors. The government looks at it and says there's no inducement here but the ordinary. The defendant was a broker. He didn't have to have money. He wasn't the source. He was a broker. All he had to do was be able to find a seller. The informant was a buyer without a source, so he looked for a broker. The defendant can hardly say that he was pressured, even though he calls the pressure relentless. He's called on March 15th. He's not called again for 28 days. They speak on the 12th. They speak on the 14th, and the defendant is critical of the informant for not having done the deal on the 13th. And, as Your Honor pointed out, on the 21st, he calls his source. He says, I want three ounces. The informant corrects him. It's only two. The defendant goes off, produces the two ounces, and brings it back. He described himself as someone who had experience. He referred to one of his sources as producing drugs for the Zetas, a very violent and experienced cartel in Mexico. He said that he had two sources. He had Mac and the guy who actually produced the two ounces on the 21st. He concealed from the informant the identity of his source. He said, I'm going to go out to Victorville to get it. He didn't. He drove to south-central L.A. and hung out at a house for an hour to make it look as though he'd gone to Victorville, and then he came back and provided the two ounces. The inducement is no more than the ordinary. In the defendant's familiarity, his strongest argument that he couldn't produce the two ounces is to say that after the deal, when he had produced two ounces, he said, I don't have enough money to go in to buy myself. Could you provide some money to buy for my clients? It strikes me as highly improbable that a defendant can make out a sentencing and trapping argument when the very conversation he points to speaks of his clients. He was a broker with respect to Jaguar, but he was a trafficker in a smaller way with respect to his clients. He brokered the deal with the informant, and he also asked the informant, how would you like to get into business with me, providing me money for me to buy more, sell to my clients? So this strikes me as a perfectly ordinary example of a defendant who sells himself in a small way, brokers in a larger way, working himself up into the trafficking trade, and he responded to ordinary inducement. Okay. Time is up. Thank you. Thank you. You can have one minute for rebuttal, Ms. Whistler. I can help the government out regarding the three ounces and the one ounce discrepancy. If we look at Appellant's Excerpts of Record, Volume 2, 257 to 258, while Agent Hamilton was actually cross-examined, he was asked, looking at his debriefing notes of Jaguar from the April 14, 2010 meeting, did he ask, did Jaguar tell him that Roque told CHS, which is the confidential human source, Jaguar, that Perez, who was also known as Mac, who was the supplier who met with Jaguar at Roque's home on the 14th, had an ounce of methamphetamine but not the three ounces that CHS requested. So Agent Hamilton was quite clear that there was one ounce. The government also indicates that they only expected Roque to function as a broker. That is absolutely contradicted by the evidence because if he only wanted a broker, when Roque told Jaguar, I'm going to give you the connection that I have, maybe you can get something from him, he rejected it. On the 14th, when he insisted on going to Roque's work because he wanted Roque to get the money, Roque told him, no, give it to Mac at my house later. And, of course, when Mac only had one ounce, he refused to do the deal. So, interestingly enough, if he was only interested in- We don't know that Mac had one ounce. Well, according to Agent Hamilton's notes, he said that Perez, who was Mac, had an ounce of methamphetamine but not the three ounces that CHS requested, and CHS is Jaguar, the confidential human source. Is that part of the notes in evidence? Yes, that's in evidence, and the transcript is cited at the appellant's excerpts of Record Volume 2, page 257 and 258. Also, when the government talks about the thinking of the FBI was that it would be too risky to purchase this small amount, well, we know a handful proved to be one ounce based on Agent Hamilton's testimony. The record does not indicate anything about what the FBI's thinking was. The only thing the record indicates about this one ounce is that it was not the three ounces that Jaguar was attempting to get. Moreover, when Agent Hamilton was asked how was this sting structured as far as the quantity, he said they left it up to Jaguar to determine what he thought he might be able to get, but Hamilton did testify that Mr. Roquet did not have any methamphetamine. He was going to see if, and he did say if, he might be able to find some. So I think that is- Ms. Duesley, you're over your time. Thank you. I'll submit. Thank you. Thank you, counsel. The matter is submitted.
judges: D.W. Nelson, Paez, Bucklo